**TAELEIFI MANE, Appellant**

**v.**

**TONY WILLIS on Behalf of Himself and the HEIRS OF AMELIA VA, Appellees**

**TONY WILLIS on Behalf of Himself and the HEIRS OF AMELIA VA, Appellants**

**v.**

**OLO LETULI, TAELEIFI MANE, AVEGALIO FAMILY, FAILAUTUSI AVEGALIO, SU'A of the Village of Auma, and TUITELELEAPAGA NAPOLEONE, Appellees**

High Court of American Samoa
Appellate Division

AP No. 30-90
AP No. 31-90

June 23, 1992

Before RICHMOND, Associate Justice, GOODWIN,* Acting

---

* Honorable Alfred T. Goodwin, Senior Circuit Judge, United States

Associate Justice, MUNSON,[**] Acting Associate Justice, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel: Appellant Mane Pro Se
For Appellants/Appellees Willis and Heirs of Amelia Va, Charles V. Ala'ilima
For Appellees Olo and Avegalio family, Aitofele T. Sunia
For Appellee Tuiteleleapaga, Tautai A.F. Faalevao

RICHMOND, J:

These consolidated appeals are from a decision of the Land and Titles Division dividing the flat land called "Lega'oa" in the Village of Leone among the various claimants, after first determining exactly what land is part of "Lega'oa." The proceedings were bifurcated for ease of adjudication, and these appeals are from the second proceeding. The trial court also adjudicated the respective rights of parties claiming the slopes of the valley outside Lega'oa but within a survey submitted by appellant Willis. The procedural history and facts of the case are discussed in detail in *Willis v. Fai'ivae*, 10 A.S.R.2d 121 (Trial Div. 1989); *aff'd*, 12 A.S.R.2d 37 (App. Div. 1989).

In AP No. 30-90, appellant Taeleifi asserts that the trial court erred in its failure to use a hibiscus hedge as the northern boundary of the Taeleifi land called "Lalolelata," or in the alternative, that the court should have awarded the entire tract Lalolelata to the Taeleifi family through adverse possession. The trial court implicitly found that merely a license, rather than the land itself, was granted by the oral agreement relied on by Taeleifi when it determined the boundary of Taeleifi's land. Taeleifi claims that the hedge was the boundary agreed to according to fa'a Samoa customs and that such customs should not be inferior to "court established boundaries." The short answer to that allegation is that under A.S.C.A. § 1.0202, when the

Court of Appeals for the Ninth Circuit, serving by designation of the Secretary of the Interior.

[**] Honorable Alex R. Munson, Chief Judge, United States District Court for the Northern Mariana Islands, serving by designation of the Secretary of the Interior.

two systems conflict, custom must give way to the laws of American Samoa and the United States--"[t]he customs of the Samoan people *not in conflict* with the laws of American Samoa or the laws of the United States concerning American Samoa shall be preserved" (emphasis added).

In AP No. 31-90, appellant Willis claims that the court erred in its determination of the dividing line between the inland half of Lega'oa, which belongs to appellants, and the seaward half, or in not adjusting (i.e. increasing) the land of the inland half so that the division awarded to appellants was exactly half of the tract; that the court erred in its determination of the western boundary, because it used a stream located within the "flat land" as the boundary and failed to adjust for this reduction of the inland half; that the court erred in its determination that Failautusi Avegalio's freehold grant was located within Lega'oa; and that the court erred in not awarding appellants' residences and farms located on the slopes surrounding Lega'oa, if not the entire slopes, to appellants.

The issue of the main dividing line was not raised in Appellant Willis' motion for new trial, so it is not properly before this Court. Even if it were considered by this Court, however, the trial court properly used the boundaries that were implemented based on the 1906 decision, rightly assuming that those persons closer in time to the decision were in a better position to determine what the 1906 court meant by "inland half." The trial court heavily relied on several surveys from 1915 or earlier and their accompanying recent retraces[1] to establish the dividing line between the inward and seaward halves of Lega'oa. Likewise, the trial court's finding that the stream formed the western boundary of the Willis tract was based on the implementation of the 1906 decision. Additionally, the trial court, in its opinion on the Willis Motion for New Trial, stated that even if the Willis tract originally extended to the boundary argued by Willis, the current

---

[1] Five of these six parties with old surveys rely on long-registered titles. The registered surveys with accompanying retraces were offered by the Ripley estate, the Meredith heirs, and the Uo family. A freehold land grant approved by the Land Commission of Samoa to the Roman Catholic Diocese of Samoa Pago Pago was also offered with its recent retrace, and the heirs of Sekio offered a freehold land grant approved by the Land Commission of Samoa without a retrace. An unregistered map and its accompanying recent retrace was offered by Fai'ivae.

occupants had satisfied the 20-year, adverse-possession statute by maintaining occupancy since well before 1962.

We need not detail all of the many additional factors considered by the trial court in its thorough and well-reasoned opinion. The court carefully considered the extensive testimony offered by both interested witnesses and disinterested witnesses, as well as the many surveys and photographs submitted by the various claimants. Additionally, the court conducted its own on-site inspection of the relevant tracts of land.

The remaining questions on appeal here are ones of fact. The relevant test is not whether there were facts in the record sufficient to support decisions for the two sets of appellants, but whether there was sufficient evidence to support the trial court's decisions. For both appeals considered here, there was. Thus, the trial court's resolution of these issues was not clearly erroneous. On the contrary, it was very well-supported on the record. We therefore AFFIRM.